UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 5:13 CR 420 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Benjamin Suarez, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Giorgio's Motion to Withdraw his Plea of Guilty (Doc. 310). For the following reasons, the motion is DENIED.

**FACTS**

Defendants Michael Giorgio (sometimes, "defendant") and Benjamin Suarez were indicted on September 24, 2013, for various counts related to campaign finance fraud. In addition, both defendants were charged with various counts of obstruction of justice. On October 22, 2013, the grand jury issued a superseding indictment also charging defendant Suarez Corporation Industries, Inc. ("SCI") with similar crimes. Throughout the pendency of the case,

1

it appears that all three defendants were parties to a joint defense agreement. Each party was represented by separate counsel. SCI paid all of the attorneys' fees for all of the parties. In addition, SCI paid the attorneys' fees for all SCI employees who were called to testify. The attorney representing the employees did not represent any of the defendants.

The fee agreement between SCI and Giorgio's counsel indicates as follows:

> It is our understanding that SCI has agreed to pay all invoices for our legal services rendered on behalf of Mr. Girogio in connection with this engagement. However, we will be serving as his counsel and not as counsel for SCI. Therefore, our invoices may be redacted to remove any references to attorney-client privileged matters.

Counsel for Giorgio did not obtain a conflict wavier from Giorgio for this third-party fee-paying arrangement. Throughout the representation, Giorgio's counsel presented the possibility of a plea deal with the government. (Doc. 310-7 (email dated October 25, 2012); Doc. 310-6 (letter dated March 3, 2014)). Giorgio, however, was not interested. (Doc. 310-6 ("...you have previously indicated in our prior conversations an unwillingness to consider a plea agreement involving any period of incarceration...")).

On May 16, 2014, after the Court's Final Pretrial, government counsel met with counsel for Giorgio to discuss a possible plea. The following day, Giorgio's counsel informed the government that Giorgio was so willing. After a proffer, the parties proceeded to negotiate the terms of a plea deal. The factual basis of the plea agreement provides, in relevant part, that Giorgio "then knew" that SCI could not make campaign contributions and, by using straw donors, contribution limits were exceeded. The factual basis also provides that Giorgio understood that the employees were reimbursed for the donations and were not expected to "repay" the reimbursements.

On May 19, 2014, Giorgio came before this Court for a change of plea hearing. He

2

acknowledged that the factual basis set forth in the plea agreement is true and accurate. Following his plea, Giorgio testified as a government witness over the course of three days. During this testimony, Giorgio acknowledged that he "came to the realization that he had to own up to what [he] did." He further testified that he "knew right off the bat what [they] were doing was not right," and that he rationalized it due to a misguided sense of loyalty to Suarez. In addition, Giorgio expressly testified that he committed a crime. When asked by defense counsel if he wanted to reconsider his guilty plea he testified that he did not. Thereafter, on June 30, 2014, the jury acquitted Suarez and SCI of the charges related to campaign contributions.

The government provides the Court with an email from attorney Ralph Cascarilla, who represented Giorgio during the plea negotiations. The email indicates that Giorgio informed Cascarilla on July 24, 2014 that Giorgio was terminating Cascarilla and that Giorgio had obtained new counsel. As such, Cascarilla informed the government that he did not "presently consider [himself] to be Mike Giorgio's counsel." Three weeks later, Giorgio's new counsel entered an appearance and Cascarilla filed a motion to withdraw. Another month passed and new counsel filed the present motion to withdraw Giorgio's guilty plea. The government opposes the motion.

## **ANALYSIS**

Pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure, a court may permit withdrawal of a guilty plea upon a showing by the defendant of any "fair and just reason." Granting a withdrawal is a matter within the broad discretion of the district court. *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir. 1988). The onus is on the defendant to prove the existence of a "fair and just reason" supporting the withdrawal of his guilty plea. *United States*

3

*v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1994).  "...[T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)(citations and quotations omitted).

In determining whether the defendant has proffered a "fair and just" reason, the court may consider the following factors:  (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to present the grounds for withdrawal at an earlier point in the proceedings; (3)  whether the movant has asserted or maintained his legal innocence; (4) the circumstances underlying the entry of the guilty plea; (5)  the nature and background of the defendant; (6) the defendant's previous experience with the criminal justice system; and (7) the potential prejudice to the government if the motion to withdraw is permitted.  *United States v. Ellis,* 470 F.3d 275 (6th Cir. 2006) (citations omitted)  These factors do not comprise an exclusive list and no one factor is controlling. *Id*.   Moreover, where defendant otherwise fails to establish a "fair and just" reason, the Court need not address whether the government will be prejudiced by a withdrawal of the plea.  *United States v. Triplett*, 828 F.2d 1195 (6 th Cir. 1987).

Because Giorgio's primary argument rests on a claim of ineffective assistance of counsel, the Court will address this issue first.  The Court will then proceed to address the factors relevant to determining whether Giorgio has a "fair and just" reason for withdrawing his plea.

1.  Ineffective assistance of counsel

Giorgio argues that he should be permitted to withdraw his guilty plea because Cascarilla

4

and his firm were under a potential conflict of interest that developed into an actual conflict. According to Giorgio, his attorneys' fees were paid by SCI, his co-defendant.  Therefore, a potential conflict of interest existed.  Giorgio claims that his attorneys never explained this conflict to him and did not obtain a written waiver.  Nor did the attorneys bring the potential conflict to the Court's attention.  As such, the Court was not able to conduct a conflict hearing under *United States v. Krebs*, 788 F.2d 1166 (6th Cir. 1986).  Giorgio claims that this potential conflict of interest developed into an actual conflict because Giorgio had a "valid and viable antagonistic defense" to the charges.  According to Giorgio, he acted at the sole direction of SCI and was not the actual "payor" of the funds.  Giorgio claims that this defense was not presented because it was entirely adverse to SCI.  Giorgio further argues that counsel also acted as the "de facto" counsel for co-defendant SCI.  According to Giorgio, Cascarilla and his law firm assisted in responding to the grand jury subpoenas issued to SCI.

In response, the government argues that even if a potential conflict of interest existed, it never rose to the level of an actual conflict.  As such, Giorgio's ineffective assistance of counsel argument fails.  The government points out that there is no indication that Giorgio's counsel acted other than in Giorgio's best interest.  The government further claims that Giorgio's own testimony and statements he made to the government belie any argument that defense counsel could have presented a defense that Giorgio did not know that his conduct violated the law.  Moreover, according to the government, had Giorgio indicated that he believed his actions were legal, this trial strategy actually would have *helped* SCI.  Regardless, the government claims that a defense wherein Giorgio argues that he was simply "taking orders" would not absolve him of criminal liability.   Thus, Giorgio fails to point to any actual conflict of interest.  The government

further notes that Giorgio accepted a plea deal that resulted in him testifying *against* SCI. Thus, it is illogical to conclude that by counseling Giorgio with regard to accepting a plea, Cascarilla somehow placed SCI's interests over those of Giorgio.

It is well-settled that "the possibility of a [conflict of interest] is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)[1].

> In order to successfully assert a claim of ineffective assistance of counsel based on a conflict of interest, a defendant who entered a guilty plea must establish: (1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendant.

*Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1981).

In order to establish an actual conflict of interest, Giorgio must make a factual showing from the record sufficient to demonstrate that his attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." *Id.* at 481 (citations and quotations omitted). An actual conflict of interest arises where the

---

[1] Giorgio argues that for ineffective assistance of counsel claims based on conflicts of interest, he need not show prejudice. In support of his position he cites *Cuyler*. The government argues that *Cuyler* is limited to dual representation cases and has no applicability to third-party payor conflicts. Regardless, the government indicates that "out of an abundance of caution and to shorten the overall analysis...the government will [presume]...that the lesser [*Cuyler*] standard actually did apply." Under either standard, however, the defendant must establish an actual conflict of interest. Because Giorgio fails in this regard, the issue of prejudice need not be addressed by the Court. As suggested by the government, the Court will apply the *Cuyler* standard.

6

evidence shows that an attorney opts to *forego* plea negotiations that would require one defendant to testify against the other. *Id*.

Upon review, the Court finds no actual conflict of interest existed that affected the quality of performance by Giorgio's counsel.  Although a potential conflict arose because SCI paid the legal fees for Giorgio's attorney,[2] the record is entirely devoid of any indication that counsel operated under an *actual* conflict of interest.  The only argument Giorgio makes is that he had a viable defense to the charges, *i.e.*, he acted at the direction of SCI.  The Court agrees with the government, however, that this defense is not viable–Giorgio points to no law in which acting at the direction of an employer would absolve a defendant from criminal liability.  Rather, the government aptly points out that the crimes involve specific intent.  Thus, the government needed to establish that Giorgio acted with the requisite intent.[3]  A denial of specific intent,

---

[2]   To the extent defendant is arguing that "dual representation" occurred because Cascarilla and his law firm assisted SCI in some fashion with the response to the grand jury subpoenas, the analysis does not change.  Because the Court applied the more favorable *Cuyler* standard, it does not matter whether the conflict arose from either "dual representation" or as a result of SCI's payment of legal fees.

[3]   The Court further notes that Giorgio's purported "antagonistic" defense is belied by the record.  In his plea agreement and subsequent testimony, Giorgio indicated that he did in fact know that his actions constituted a crime.  In this motion, Giorgio acknowledges that he his *not* "disavowing" the plea agreement.  Thus, Giorgio is still claiming that he knew that his actions constituted a crime.  As such, Giorgio's argument misses the mark.  In footnote seven of the reply brief, Giorgio compares this case to a drug case in which the defendant acted out his boss's orders "without specific knowledge of the illegality of the crime."  In this case, however, Giorgio testified that he knew his actions constituted a crime.  Thus, this analogy is not on point.

however, would not be in conflict with SCI's defense. More telling, however, is that counsel advised Giorgio to accept a favorable plea that resulted in Giorgio testifying directly *contrary* to SCI's interests. In short, Giorgio falls far short of establishing that Cascarilla acted under an actual conflict of interest.

2. *Ellis* factors

Having rejected defendant's claim of ineffective assistance of counsel, the Court now turns to whether defendant should be allowed to withdraw his plea even in the absence of an actual conflict of interest.

A. Timeliness

The timeliness factor weighs heavily against allowing Giorgio to withdraw his plea. He entered his guilty plea on May 19, 2014, and did not move to withdraw his plea until nearly four *months* later. In the meantime, defendant testified for the government at the trial of defendants SCI and Suarez. The jury returned its verdict on June 30, 2014. The government claims that it was not until after Giorgio received the presentence investigation report sometime in September that he filed the instant motion. The Sixth Circuit has held that much shorter delays justify the denial of a motion to withdraw a plea. *See, e.g.*, *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004)("[defendant's] unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir.1999) ("The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days to file his motion after entering his guilty plea."); *United States v. Baez*, 87 F.3d at 808 ("The strongest factors supporting the district court's ruling are the sixty-seven day

8

delay between the motion and the plea, and Baez's failure to justify this extensive delay.").

Here, the only justification defendant offers for his extensive–nearly four *month*–delay is that he was unaware of the conflict of interest. The Court, however, has rejected this argument. Regardless, it appears that Giorgio waited approximately five weeks even after securing new counsel. Accordingly, this factor weighs heavily against allowing Giorgio to withdraw his plea.

### B. Failure to present grounds earlier

The only basis on which Giorgio argues that he has a valid reason for not moving to withdraw his plea at an earlier time is that he was unaware of the actual conflict of interest. Having rejected the argument that an actual conflict of interest exists, the Court finds that this factor does not weigh in favor of withdrawal.

### C. Whether defendant maintained his legal innocence

Giorgio argues that this factor should not be considered by the Court. According to Giorgio, because prejudice is presumed in *Cuyler*-type claims, Giorgio need not show that he "would not have plead guilty and would have insisted on going to trial." Again, having rejected Girogio's claim of an "actual conflict," the Court finds that this factor weighs heavily against withdrawal. As noted by the government, Giorgio testified over the course of several days and acknowledged under oath his participation in the charged crimes.

### D. Circumstances underlying the plea

Defendant argues that the entry of the guilty plea involved an actual conflict. Having rejected this argument, the Court finds that this factor does not weigh in favor of withdrawal.

### E. Nature and background of defendant

The Court finds that this factor also weighs against granting defendant's motion. Giorgio

is a highly educated 62-year old man who had a high-level executive job for several decades. His nature and background suggest that Giorgio has a good deal of experience making significant decisions, many of which surely had consequences. Thus, this factor weighs against withdrawal.

F.  Previous experience with criminal justice system

Giorgio has no pervious experience with the criminal justice system. Thus, this factor may weigh slightly in favor of withdrawal.

G.  Prejudice to government

Because the Court finds that Giorgio falls far short of establishing that a "fair and just" reason exists to allow him to withdraw his plea, the Court need not address this factor. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)("The prejudice to the government need not be established or considered unless and until the defendant has established a fair and just reason for vacating his plea.").

**CONCLUSION**

For the foregoing reasons, Defendant Giorgio's Motion to Withdraw his Plea of Guilty is DENIED.

IT IS SO ORDERED.

                                          /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
                                          United States District Judge

Dated: 10/24/14